Good morning, Your Honors. Robin Carr for the petitioner. And I will reserve time, Your Honor. How much would you like? Two minutes. Two minutes, okay. If it may please the Court, Your Honors, the government's argument here is that they should be able to break the law and that you, the Court, should look the other way. I'm asking you not to do that. I bet they wouldn't state what they're asking us exactly the way you stated it. Do you think? Yes, Your Honor. The government, under its regulations, is required to accept and process applications for citizenship. And under the regulations that we're looking at for the year that my client's father sought to file his application, they were required to expedite those applications and process them within 60 days. He never got one, did he? I'm sorry? Did he ever get one? His father did fill out an application, and following the instructions on the form, he brought that application with all of the supporting documents to an INS office in San Jose in December of 1988. He encountered an INS agent who took the application, looked at it, and told Mr. Mustanich that she didn't know what to do with the application and sent him to another office. My client's father went to the other office and encountered another agent who told him she didn't know what to do with it and she wasn't going to process it, handed it back to him and gave him a phone number to call. When he called the number, he didn't receive any basic messages. He called the number several times. Nobody ever returned his phone call. But in effect, Counselor, you're asking that we establish citizenship by estoppel, are you not? No, I'm not asking the court to determine that my client is a United States citizen, nor am I asking you to adjudicate a citizenship application. I'm asking the court on an estoppel theory to basically order that the Department of Homeland Security process the application as if it were filed in 1988 when his father attempted to file it. But that's, as you said, that's based on estoppel principles, right? That's based on estoppel principles, correct. Now, how do you get around INS versus Pangilinan? I think this case is distinguishable from Pangilinan, Your Honor, because first, I'm not asking the court to adjudicate my client's citizenship application or find that he's a United States citizen. I'm asking you to order the Department of Homeland Security to treat that application as having been constructively filed. It's also distinguishable from the – What authority do you have for that? The – well, first there's the 68 Filipino war veterans case where the – What's the citation on that? It's a central district case. Well, that's a district court case. Right. Do you have any appellate case? Well, the Supreme Court in Pangilinan addressed the 68 Filipino war veterans case and did not have an issue with the fact that the Central District of California in that case essentially ordered the Department of Homeland – well, the INS at the time to treat the applications of the Filipino war veterans who fit into what they deemed Category 1 as having been constructively filed. In that case, the Category 1 veterans were identical to – they were almost identical to the client – to my client's situation in that these veterans had either filed or brought an application to an INS office and the INS declined to adjudicate the application or in some cases they inquired of the INS office about filing the application and were told that they shouldn't bother because the INS would not adjudicate them anyway. You know what? You tell me whether there's a problem. Affirmative misconduct. Isn't that the requirement? It is, Your Honor, and I think there is sufficient evidence on this record for the court to find that the government did engage in an affirmative misconduct. And how would you define the misconduct here? By saying to him, I don't know what to do with it, and he has a telephone number, you must call and get some more information. Isn't that substantially what was done? There is more to it than that, Your Honor. Has to be if there's going to be affirmative misconduct, I think. I think the court could find that the agent's refusal to adjudicate the application when it was her duty to do just that is affirmative misconduct, but in a motion to remand that I filed recently. But what should she have done? She said, I don't know what to do with this, but here's some telephone numbers, you call. If she didn't know what to do with it, she should have accepted the application for filing and then found, you know, I guess forwarded it to the naturalization office. The naturalization office. The deadline wasn't near at that time. Right. But. I could possibly see how we'd stretch to your position if the deadline was close. In other words, it must be filed and she came in on the day. But there was nothing urgent about it at that time, was there, on this record? On this record, no, because he was about 10 years old at the time and he had until 18 to file the application. But that was one of the issues that I addressed in the motion to remand that I filed recently with this Court, and there was more to it than that. There was, and there were actions on the part of that INS agent that would, I think, clearly amount to affirmative misconduct, and through the ineffective assistance of the counsel in the removal case level, that evidence was not brought before the Court. So at a minimum. Have you raised an ineffective assistance of counsel claim here? We have not at the immigration court or the BIA level. But the issue, I think, is more how to get this evidence before the Court. And one way to do that would be either remanding the case to the immigration court for an evidentiary hearing or transferring. But counsel, as you well know as an experienced lawyer, that if you haven't raised it at the BIA level and you haven't raised it in your opening brief, it's waived. How can you bring it up now? We have the issue of affirmative misconduct and estoppel was raised at the immigration court level, but it was raised. But that has nothing to do with an ineffective assistance of counsel, does it? Well, it was raised not through the efforts of my client's immigration attorney. It was raised by the immigration judge in his oral decision. And that was the first time that the issue of equitable estoppel and affirmative misconduct ever came up. And at that point, my client's father had already testified. The immigration attorney never brought out the evidence about what really occurred at the office in San Jose. So this evidence wasn't properly brought before the Court, and the only way to remedy that would be to either send the case back to the immigration court for an evidentiary hearing or to transfer the case to the district court for a de novo hearing on the citizenship issue. And we also have a motion pending before the Court to do just that. I see this Court is also the case is also. You wanted to reserve two minutes, so you'll probably want to. We'll let the government come forward, make its presentation, and then we'll reset your clock at two minutes when it's time for you to come up again, okay? Okay, Your Honor. We'll hear now from the government. Good morning, and may it please the Court. My name is Patrick Glenn, appearing on behalf of Respondent U.S. Attorney General Michael Mukasey. Your Honors, the sole issue in this case is whether the government may be a stop from denying that an alien is not a citizen when that alien has not complied with the statutory prerequisites for attaining naturalization. Citizenship in the United States, other than that governed by the United States Constitution, is left to the statutory mechanisms as enacted by the United States Congress. These requirements must be strictly complied with, and this Court does not have the equitable authority to waive any defects in the naturalization application. In this case, Petitioner sought naturalization pursuant to INA Section 322. As a prerequisite for attaining naturalization via Section 322, Petitioner had to affirmatively file an application for naturalization with the Department, or I'm sorry, with the predecessor to the Department of Homeland Security, the Immigration and Naturalization Service. Another requirement was that at the time of adjudication, the Petitioner had to be under the age of 18 years. In this case, however, Your Honors, an application for naturalization was not filed. Petitioner is not a United States citizen. He cannot be made a United States citizen through the equitable powers of this Court. As the Supreme Court noted in Inez v. Pangilinan, the power to confer citizenship on an alien who has not complied with the statutory prerequisites is not one of the Federal Court's general equitable powers. Your Honors, in this case, citizenship cannot be conferred on the Petitioner by this Court, and in these circumstances ---- What she's asking, though, is not that we confer citizenship. She's asking for equitable tolling, I guess you could phrase it, if we had to take a phrase. She wants to say, we came, we tried to file it, we did what we knew to do, and we were timely. The government wouldn't accept it, and you, Court of Appeals, say, all right, we in good faith, the government refused it, but we should act as if we filed it at that time. She's not asking us to bestow citizenship, I don't think. Do you? I do, Your Honor, and I'd like to respectfully disagree with your characterization of what actually happened before the INS. In some of the traditional cases and cases cited by Petitioner in her opening brief, both district court cases and prior cases of this circuit court, the main ---- the application was either actually filed, an affirmative misconduct, post-filing date, made this court totally applicable statute, or the INS affirmatively undertook some sort of misconduct. In this case, there is not affirmative misconduct. Petitioner's counsel cites to the Filipino case. She cites to several other district court cases where, in those cases, the alien came to the office of the INS, and the INS affirmatively said, we're not going to take this, you can't file this, you're no longer eligible for this requirement, there's been no sort of affirmative misconduct like that in this case, even assuming the sole issue is equitable estoppel, and this court would have the power to confer that kind of relief. There simply has not been affirmative misconduct. At best, the INS agents in this case weren't as helpful as they could have been. Perhaps it could be characterized as negligence even. But the circumstances and the actions of the agents in this case do not rise to the requisite level of affirmative misconduct that this court has traditionally required for a demonstration that equitable estoppel should actually be given to Petitioner's. So, Your Honors, succinctly stated, I think, first, that this Court does not have the authority to confer citizenship, and I do believe that is a central issue. And alternatively, even if this Court did determine that its equitable powers could be applied in this case, there hasn't been a demonstration of affirmative misconduct that would justify actually granting equitable estoppel. Your Honors, I'd also like to address the two outstanding motions before this Court, if there are no further questions on the other points. First, Petitioner has filed a motion to transfer this case to the district court. I think the main focus of this motion should be directed to the language of the statute at 8 U.S.C. section 1252b5b. Transfer to a district court can be had in certain circumstances, mainly when there is a genuine issue of material fact. There is in this case, Your Honors, however, no genuine issues of material fact. The facts have been agreed upon, I think, at all stages of this litigation and during the appeal process. In Respondent's opening brief before this Court, he has not disagreed with the characterization of the facts as presented by Petitioner. The sole issue before this Court, Your Honors, is what this Court may do on the facts, whether it may exercise its equitable powers or not. So I believe that this case is properly before this Court on a petition for review and can be adjudicated pursuant to 8 U.S.C. section 1252b5a. Your Honors, Petitioner has also filed a motion to remand file last week, and that's based in essence on a claim of ineffective assistance of counsel. I would note at the outset that this claim has never been presented to the agency, and further, Petitioner did not raise it in her opening brief before this Court. However, importantly, the claim she raises in that motion, I think on a cursory examination of the record, is not colorable. Petitioner alleges that by the ineffectiveness of former counsel, she was or Petitioner was somehow deprived of presenting evidence before the immigration judge. But a fair reading of the record, Your Honors, Petitioner's father had ample opportunity to state exactly what steps he took in attempting to file the application for naturalization, and there's simply no need to garner any further facts through the administrative process. In short, the record before this Court I think provides an ample opportunity to decide the case on the merits. Your Honors, if there are no further questions? None. Thank you very much. Thank you, Your Honors. Ms. Khoury, if you have two minutes, if you'd like to use them for rebuttal. I would, Your Honor. I just wanted to bring out one more theory that this case is also distinguishable from Pendulinum in that if the Court grants the equitable relief we're requesting, the Court would be effectuating a public policy of Congress rather than frustrating one. That was one of the concerns with the U.S. Well, what would that public policy be? Well, I think it would be the public policy that foreign adoptions be conducted in a way that meets the best interests of children. I think the Court can look to the fact that the Congress passed the Child Citizenship Act of 2000, thus making less onerous the requirements for a child to automatically require a citizenship through an adoptive U.S. citizen parent. That's a real stretch, don't you think, counsel? I don't think it is, Your Honor, because clearly Congress intended for the differences in the Filipino war veterans case, and one of the reasons that Pendulinum reached the decision it did, that the Court cannot use its equitable estoppel theory to frustrate a public policy of Congress, was that after the 1940 Naturalization Act, the Congress amended the act to exclude Filipino war veterans, and they also set that deadline for filing those applications, so that by allowing the applications, the untimely applications to be untimely filed, the Court would be frustrating the policy of Congress. In this case, Congress amended the child, the naturalization law to make it easier for adopted foreign-born children to become U.S. citizens. Have you raised any of these points in your brief? Not the public policy issue. And also, Your Honor, the, I think the Court can, this time public policy is reflected in the fact that the United States ratified the Hague Convention on Foreign Islands. We appreciate that. Counsel, your time has expired. We thank both counsel for their presentations, and this case is submitted. Thank you, Your Honor. The second case has been submitted on the briefs and record. That's Monta v. Mukasey. The next case that will be argued this morning is Monta v. Chertoff, and we'll hear first from Jennifer Kuhn from the Federal Public Defender's Office in San Diego. Thank you.
judges: Farris, M. Smith, Holland